**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **FRED SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-12-1365-HE** |
| | ) | |
| **BRIAN WIDEMAN et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Fred Smith, a state prisoner appearing pro se, brings this federal civil rights action against seven defendants, alleging violations of the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"),[1] and Oklahoma state law. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636.

Defendants Brian Wideman, Rebecca Adams, Tim Wilkinson, and Terry Underwood (collectively, "the MSJ Defendants") have moved for summary judgment on or dismissal of Plaintiff's claims, and Plaintiff has responded. *See* Defs.' Mot. Summ. J. ("Defs.' MSJ") (Doc. No. 35); Pl.'s MSJ Decl. (Doc. No. 44); Pl.'s MSJ Notice (Doc. No. 45); Pl.'s Resp. to Mot. Summ. J. ("Pl.'s MSJ Resp.") (Doc. No. 47); Pl.'s MSJ Br. (Doc. No. 46). Defendants Justin Jones and Debbie Morton (together, "the ODOC

---

[1] 42 U.S.C. §§ 2000cc to 2000cc-5.

Defendants")[2] have filed a motion to dismiss, to which Plaintiff has responded. *See* ODOC Defs.' Mot. to Dismiss (Doc. No. 40); Pl.'s Resp. to Mot. to Dismiss (Doc. No. 48). Defendants additionally have filed a six-volume Special Report ("S.R.," Doc. Nos. 29, 30, 31, 32, 33, 34) in accordance with the Court's order and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has filed a motion with supporting declaration and brief seeking a temporary restraining order or preliminary injunction; responses were filed by both sets of Defendants. *See* Pl.'s Mot. Prelim. Inj., Decl., and Br. (Doc. Nos. 52, 53, 54); MSJ Defs.' Resp. (Doc. No. 55); ODOC Defs.' Resp. (Doc. No. 56).

Having considered the arguments, pleadings, and evidentiary materials submitted by the parties, the undersigned recommends that (1) Plaintiff's claims against Defendants Justin Jones and Debbie Morton in their official capacities seeking monetary damages be dismissed, and (2) summary judgment be granted in favor of all Defendants[3] on all of Plaintiff's remaining federal claims. The undersigned further recommends that (3) Plaintiff's motion for a temporary restraining order or preliminary injunction be denied,

---

[2] Plaintiff's Complaint names Justin Jones, "the Director of the Oklahoma Department of Corrections" as a defendant. *See* Compl. (Doc. No. 1) at 3 (capitalization altered). On January 17, 2014, Robert Patton succeeded Justin Jones as the Director of Oklahoma Department of Corrections. Although the undersigned refers to "Defendant Jones" herein, Director Patton should be substituted as Defendant on Plaintiff's official-capacity claims in any later proceedings. *See* Fed. R. Civ. P. 25(d). Likewise, the record indicates that Defendant Debbie Morton no longer is serving as the Director's Administrative Review Authority Designee. *See* ODOC Defs.' Mot. to Dismiss at 3; Doc. No. 34-1, at 23, 24, 58. If accurate, in any later proceedings the current Director's Designee likely would need to be identified and substituted for Defendant Morton on any remaining official-capacity claims. *See* Fed. R. Civ. P. 25(d); Compl. at 3.

[3] In addition to the MSJ and ODOC Defendants, Plaintiff's Complaint alleges claims against Defendant Frank O'Claire as DCF food service supervisor. *See* Compl. at 3.

and (4) the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claim.

## PLAINTIFF'S CLAIMS

Plaintiff's claims arise out of events occurring at Davis Correctional Facility ("DCF") in Holdenville, Hughes County, Oklahoma. This private prison is owned and operated by Corrections Corporation of America Inc. ("CCA") pursuant to a contract between CCA and the Oklahoma Department of Corrections ("ODOC"). Defs.' MSJ at 1-2.[4]

In Plaintiff's first federal claim (the "Kosher Diet Claim"), Plaintiff alleges that Defendants have denied Plaintiff an "adequate and kosher diet" in violation of the First and Fourteenth Amendments to the United States Constitution and RLUIPA. *See* Compl. (Doc. No. 1) at 12-16. Plaintiff asserts that the kosher meals offered to Orthodox Jews at DCF do not actually meet kosher standards, do not provide adequate calories, and improperly do not include meat. *See id.* at 12-14. Plaintiff additionally alleges that Defendant Jones is aware of these defects based on prior lawsuits brought by other DCF prisoners, in which those prisoners were granted injunctive relief and in which Plaintiff sought unsuccessfully to intervene as a third-party beneficiary to that injunctive relief.[5]

---

[4] References to filings in this Report and Recommendation use the ECF pagination.

[5] In each of these cases, the Court specifically held that the judgment of permanent injunctive relief pertained only to the claims brought in that lawsuit and contained no language permitting enforcement by non-party ODOC inmates. *See Fulbright v. Ward*, No. CIV-03-99-W (W.D. Okla. Sept. 26, 2012) (order); *Cottriel v. Ward*, No. CIV-03-125-W (W.D. Okla. Sept. 26, 2012) (order); *Harmon v. Ward*, No. CIV-03-1465-W (W.D. Okla. Sept. 26, 2012) (order).

*See id.* at 14-16.

Plaintiff additionally brings a claim under the First Amendment and RLUIPA based upon numerous and varied acts and omissions that purportedly violated his right to free exercise of religion (the "Free Exercise Claim"). Plaintiff's Complaint alleges multiple examples of improper substantial burdens on Plaintiff's rights, including: restrictions on Plaintiff's wearing of a yarmulke at the DCF facility; failure to provide nonalcoholic wine and challah bread for religious services; and denial of permission for DCF Jewish inmates to congregate with each other for significant religious events. *See id.* at 17-25.

Plaintiff next alleges that Defendants have inflicted emotional distress upon Plaintiff and have endangered his health and safety, in violation of the Eighth Amendment and RLUIPA (the "Eighth Amendment Claim"). Plaintiff asserts that the knowing, intentional acts of Defendants—including the acts underlying the Kosher Diet Claim—rise to the level of cruel and unusual punishment and have caused Plaintiff physical pain and extreme emotional distress. *See id.* at 26-28.

Finally, Plaintiff asserts that Defendants have violated an Oklahoma state statute that purportedly grants Plaintiff a "state law right to a fair and adequate grievance process." *See id.* at 7-11 (citing Okla. Stat. tit. 57 § 566.3(G)). Plaintiff alleges that DCF's use of a separate, additional internal grievance process, together with the ODOC grievance process, violated § 566.3(G)(1)'s requirement that the ODOC grievance process shall be deemed the exclusive remedy for prisoners' complaints and grievances. *See id.* at 7-8. In support of this claim, Plaintiff additionally alleges that the ODOC's

grievance process is unfair and that the process and the prison officials "prevent or greatly obstruct inmates' efforts to comply with the policy." *See id.* at 7-11, 34.

Plaintiff has sued all Defendants in both their official and individual capacities. *See id.* at 3. Plaintiff seeks compensatory damages of $1 million and punitive damages of $3 million, as well as declaratory and injunctive relief. *See id.* at 31-34.

ANALYSIS

## I.   Whether Defendants Jones and Morton Are Entitled to Dismissal of Certain Claims on the Basis of Eleventh Amendment Immunity

Citing the Eleventh Amendment of the U.S. Constitution, the ODOC Defendants move to dismiss Plaintiff's claims to the extent they seek money damages from Defendant Jones, in his official capacity as ODOC Director, and from Defendant Morton, in her official capacity as the ODOC Director's Designee. *See* ODOC Defs.' Mot. to Dismiss at 2-5; Compl. at 3, 7-13, 15-16, 21, 29, 31-34; Fed. R. Civ. P. 12(b)(1), 12(b)(6). The Court therefore is obligated to address whether the ODOC Defendants enjoy immunity from suit. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state defendant raises the issue, "addressing the threshold jurisdictional matter [is] obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity presents a jurisdictional bar when effectively asserted).

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state unless the immunity is abrogated by Congress or unequivocally waived by the

state. U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996). The State of Oklahoma has not waived its relevant Eleventh Amendment immunity from suit in federal courts. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998); *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011); *see also Hemphill v. Jones*, No. CIV-11-1192-HE, 2012 WL 7059643, at *3 (W.D. Okla. Oct. 31, 2012) (report and recommendation of Roberts, J.), *adopted*, 2013 WL 501353 (W.D. Okla. Feb. 11, 2013). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983 or RLUIPA. *See Quern v. Jordan*, 440 U.S. 332, 342-45 (1979) (§ 1983); *Sossamon*, 131 S. Ct. at 1661 (RLUIPA). Thus, the State of Oklahoma's Eleventh Amendment immunity from § 1983 and RLUIPA claims in federal court remains intact.

Eleventh Amendment immunity applies to any state agencies considered to be "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *see also ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *abrogated on other grounds as recognized in Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted). Here, although not named as a defendant, the relevant state agency is ODOC because Defendants Jones and Morton were employed by that agency during the circumstances giving rise to this lawsuit. *See* Compl. at 3; ODOC Defs.' Mot. to Dismiss

at 3.  The Tenth Circuit has stated that it considers ODOC an arm of the State of Oklahoma.  *See Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988) (agreeing with party's concession that ODOC was entitled to Eleventh Amendment immunity as an arm of the state).  Furthermore, ODOC's powers, budgetary responsibilities, and funding establish that it is an arm of the State of Oklahoma.  *See, e.g.*, Okla. Stat. tit. 57, §§ 502-04, 505-08, 509, 510; *id.* tit. 62, §§ 34.42, 34.50-.52, 34.57.  Thus, ODOC is protected from suit in federal court by Eleventh Amendment immunity.  *See also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *ANR Pipeline Co.*, 150 F.3d at 1187.

Such Eleventh Amendment immunity extends to claims against ODOC employees who are sued in their official capacities.  "[I]t is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'  This Eleventh Amendment bar also applies to RLUIPA claims."  *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)); *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  Accordingly, Plaintiff's claims seeking monetary relief from Defendants Jones and Morton in their official capacities are barred and should be dismissed because, based on Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over such claims.

## II.  Whether Defendants Are Entitled to Summary Judgment on All Remaining Claims as a Result of Their Affirmative Defense That Plaintiff Failed to Exhaust Administrative Remedies

The MSJ Defendants seek summary judgment on the basis of their affirmative defense that Plaintiff's claims are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified in pertinent part at 42 U.S.C. § 1997e(a).  *See* Defs.' MSJ at 2-20; S.R. at 5 (Doc. No. 29); *see also Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered.").

### A.  Standard of Review

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party.  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).  While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other litigants.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

The MSJ Defendants titled their filing "Motion to Dismiss" but alternatively sought summary judgment on the same, sole basis—Plaintiff's nonexhaustion of administrative remedies. *See* Defs.' MSJ at 1, 25. With respect to this issue, the Motion relies on materials outside of the Complaint and public record. *See* Defs.' MSJ (citing Special Report and Exhibits to Special Report throughout). Plaintiff's filings in opposition expressly referred to the motion as an alternative motion for summary judgment, cited and relied upon the summary judgment standards of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, and included a sworn declaration, a "statement of disputed fact issues" identifying allegedly disputed facts, and multiple items of documentary evidence. *See* Pl.'s MSJ Decl.; Pl.'s MSJ Notice; Pl.'s MSJ Br.; Pl.'s MSJ Br. Exs. 1-5 (Doc. Nos. 46-1, 46-2, 46-3, 46-4, 46-5). Further, the Court earlier had

advised the parties that if a motion to dismiss filed by a Defendant relied upon affidavits or documentary evidence for support, the Court may consider such a motion to be a motion for summary judgment. *See* Order (Doc. No. 19); Order (Doc. No. 36); Order (Doc. No. 41); Fed. R. Civ. P. 12(b)(6), 12(d), 56; LCvR 56.1.

It is evident that Plaintiff was on notice to present and did present all material pertinent to the MSJ Defendants' dispositive Motion and that Plaintiff desired the Court to consider materials outside of the pleadings in ruling on the MSJ Defendants' Motion. Accordingly, the undersigned has treated the motion as one for summary judgment with respect to the exhaustion issue. *See* Fed. R. Civ. P. 12(d), 56(c)(1); *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000).

### B. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 "or any other Federal law" may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that Section 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

*C. The Offender Grievance Process*

    1. <u>The Oklahoma Department of Corrections Grievance Process</u>

The ODOC has adopted an offender Grievance Process, Operations Memorandum OP-090124, through which a prisoner in its custody may seek administrative decisions or answers to complaints. *See* OP-090124 (eff. May 24, 2011) (Defs.' MSJ Ex. 2 (Doc. No. 35-2)). The ODOC Grievance Process requires an inmate initially to attempt informal resolution of the complaint by speaking to an appropriate staff member within three days of the relevant incident. *Id.* § IV(A). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id*. § IV(B). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id*. § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a grievance within fifteen days of the incident or of the date of the response to the Request to Staff, whichever is later. *Id*. § V(A)(1). The grievance is submitted to either the facility's Reviewing Authority or, if medical in nature, the Correctional Health Services Administrator ("CHSA"). *Id.* § V(B)(1). This level may be bypassed only if the grievance involves a sensitive topic concerning the Reviewing Authority or CHSA. *Id*. § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within fifteen days of the date of the response. *Id*. § VII(A), (B). The grievance appeal is

submitted to the Administrative Review Authority ("ARA") or, if a medical grievance, the Chief Medical Officer ("CMO"). *Id*. § VII(B). A grievance appeal may be filed only upon the following grounds: (1) newly discovered/available evidence not considered by the Reviewing Authority; or (2) probable error committed by the Reviewing Authority that would be grounds for reversal. *Id*. § VII(A). The ruling of the ARA or CMO is final and concludes the administrative remedy procedures available through ODOC. *Id*. § VII(D).

The ODOC Grievance Process includes mechanisms for prisoners to seek relief if they fail to receive a response from a Request to Staff or a grievance. If there has been no response to a Request to Staff "in 30 calendar days of submission," the inmate may file a grievance with the facility's Reviewing Authority on the ground of non-responsiveness. *Id*. § IV(B)(7). If there has been no response to a grievance within thirty days of its submission, the inmate may send a grievance to the ARA or the CMO on the ground of non-responsiveness. *Id*. § V(C)(4).

Under the ODOC Grievance Process, inmates who are found to have abused the grievance process may be placed on a grievance restriction. *Id*. § IX. Examples of such abuse include grievances intended to harass another; "continual and repeated submitting of frivolous grievances"; submission of grievances regarding trifling matters; and continual submission of grievances containing procedural defects following previous warning. *Id*. § IX(A)(1). When an inmate is placed on a grievance restriction, the inmate may participate in the grievance process but, in each grievance submitted while subject to

the restriction, must "show cause as to why [he or she] should be permitted to grieve."

*Id.* § IX(B)(2).  Such cause is shown as follows:

> The offender will submit a duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance, stating that all contents of the grievance are true and correct to the best of the offender's knowledge.  The affidavit will also contain a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the offender within the last 12 months.  Each page of the affidavit must be signed, verified and notarized.

*Id.* § IX(B)(2)(a).  If the inmate does not comply with these requirements, the grievance will be returned to the inmate, accompanied by written reasons for the Reviewing Authority's action.  *Id.* § IX(B)(2)(b)-(c).

## 2.  The CCA-DCF Grievance Policy

The contract between ODOC and CCA/DCF additionally required DCF to maintain a grievance policy through which the inmates could address issues pertaining to their confinement at DCF.  *See* Compl. at 8; Defs.' MSJ at 5-6; S.R. at 3-4; CCA-DCF Grievance Policy 14-15 ("CCA-DCF Policy 14-15") (Defs.' MSJ Ex. 3 (Doc. No. 35-3)); ODOC-CCA Contract § 5.15 (Defs.' MSJ Ex. 4 (Doc. No. 35-4)); *accord* OP-090124 §§ II(B)(4), V(A)(6).  The record supports Defendants' contention that, to meet this contractual obligation, CCA-DCF Policy 14-15 was in place alongside the ODOC Grievance Process from October 2009 through September 2012.  *See* S.R. at 4; S.R. Ex. 6.6 (Doc. No. 34-1) at 38, 41-42.  During this time, "ODOC Policy OP-090124 govern[ed] the grievance process.  [CCA-DCF] Policy 14-5 constitute[d] the facility-specific grievance policy."  *See Burnett v. Jones*, 437 F. App'x 736, 741 (10th Cir. 2011) (citation omitted).

Plaintiff's administrative filings relevant to this suit span from March 2011 to November 2012; thus, for much of the pertinent time frame "the grievance process at [DCF was] governed by Oklahoma regulations and [DCF]'s contract with the ODOC." *See id.*; S.R. Exs. 6.1 (Doc. No. 29-6), 6.2 (Doc. No. 30-1), 6.3 (Doc. No. 31-1), 6.4 (Doc. No. 32-1), 6.5 (Doc. No. 33-1), 6.6. In practice, it appears that the two systems were complementary and, in large part, essentially identical, and shared a similar framework. Like OP-090124, CCA-DCF Policy 14–5 required an inmate to attempt informal resolution of an issue before filing a formal grievance and then any appeal. *Compare* CCA-DCF Policy §§ K, M, P, *with* OP-090124 §§ IV, V, VII. *See also Shupe v. Corr. Corp. of Am.*, No. CIV-080224-HE, 2008 WL 4681581, at *3 (W.D. Okla. Oct. 21, 2008). Grievances lodged against the "contracting agency"—i.e., the Oklahoma Department of Corrections—were filed in accordance with OP-090124 and were appealable to the ARA. *See* CCA-DCF Policy 14-5 §§ G(4), N, P(5).[6]

In the analysis below, the undersigned has indicated where relevant whether each of Plaintiff's exhaustion efforts was *initiated* under the auspices of OP-090124 or CCA-

---

[6] In support of Plaintiff's state-law claim, Plaintiff contends that the coexistence of both systems was unlawful. Importantly, however, there is no indication in the record of any appeal to the ARA being rejected based upon any failure by Plaintiff to adhere to a requirement that is specific to CCA-DCF Policy 14-5 or because Plaintiff or officials proceeded under one system rather than another. *See* Compl. at 8; Pl.'s MSJ Decl. at 10; Part II(D), *infra*. Further, while Plaintiff asserts that various Defendants prevented him from properly exhausting administrative remedies, Plaintiff does not contend (in contrast to his criticism of OP-090124) that any specific aspects of the written CCA-DCF Policy 14-5 are unlawful. *See* Compl. at 8; Pl.'s MSJ Decl. at 10. In other words, Plaintiff objects to the manner by which the CCA-DCF Policy 14-15 was administered by Defendants, and to its coexistence with OP-090124, but not to the Policy in and of itself.

DCF Policy 14-5; however, by the time Plaintiff's complaints reached the appellate level, they were all submitted under the OP-090124 framework rather than that of CCA-DCF Policy 14-5. In other words, at the final and most significant level of review, all of Plaintiff's grievance appeals were submitted to the ARA as per the ODOC Grievance Policy, rather than to the DCF Warden/Administrator as they would have been under CCA-DCF Policy 14-5. *See* S.R. Exs. 6.1, 6.2, 6.3, 6.4, 6.5, 6.6; OP-090124 § VII; CCA-DCF Policy 14.5 §§ P(2)(a), P(5).

### D. Plaintiff's Efforts to Exhaust Administrative Remedies

"[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The only claims that may be asserted validly in this action are those that were grieved properly under a procedure that was fully available to Plaintiff. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). The undisputed factual record demonstrates that Plaintiff submitted a large number of documents to DCF and ODOC officials that requested relief on the fundamental dissatisfactions underlying Plaintiff's Kosher Diet Claim, Free Exercise Claim, and Eighth Amendment Claim. *See* S.R. Ex. 6 Vols. I-VI;[7] *Reeder v. Doe 5*, 507 F. Supp. 2d 468, 481 (D. Del. 2007) (holding while "perfect overlap between the grievance and a complaint is not required by the PLRA," there must be "a shared factual basis between

---

[7] Although Defendants have submitted multiple spreadsheets and other summaries of Plaintiff's grievance efforts, the undersigned except where specified has relied on and cited the actual administrative documents in the record in reaching findings and conclusions as to Defendants' affirmative defense. *See generally* OP-090124 § XI (requiring authorities to record and keep copies of grievances and dispositions); CCA-DCF Policy 14-5 § R (same).

the two" (citing *Ngo*, 548 U.S. at 94-95)); *Davis v. Okla. Dep't of Corr.*, No. CIV-06-229-HE, 2007 WL 869650, at *10-11 (W.D. Okla. Mar. 20, 2007) (holding that a grievance must "sufficiently alert prison officials as to the nature of the alleged wrong").

In accordance with these principles, the undersigned will proceed on a claim-by-claim basis and consider those attempts at administrative exhaustion that are relevant to the factual assertions underlying each federal claim asserted in the Complaint.[8]   As detailed below, the undisputed facts—established through the evidentiary material submitted by the parties—show that Plaintiff, despite submitting numerous grievances and grievance appeals, failed to properly exhaust his administrative remedies with respect to his Constitutional and federal-law claims.[9]

### 1. Kosher Diet and Eighth Amendment Claims

#### a. Grievance 2011-145

On April 14, 2011, Plaintiff submitted an "Informal Resolution" notice to prison staff, inquiring about upcoming meals during Passover and complaining that he had not

---

[8] *See generally Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) (holding PLRA satisfied "so long as [federal prisoner's grievance] provides prison officials with enough information to investigate and address the inmate's complaint internally"), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

[9] Assuming Plaintiff had exhausted his claims against the MSJ Defendants, it is unclear whether a cause of action under RLUIPA would lie against a private corporation such as Corrections Corporation of America Inc. or its employees.  *See Cutter v. Wilkinson*, 544 U.S. 709, 715-16 & n.4 (2005); *Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013); *Raheem v. Miller*, No. 09-80-C, 2010 WL 2595112, at *12 & n.29 (W.D. Okla. May 14, 2010) (report and recommendation of Bacharach, J.), *adopted*, 2010 WL 2595082 (W.D. Okla. June 23, 2010); *Dean v. Corr. Corp. of Am.*, 540 F. Supp. 2d 691, 693-95 (N.D. Miss. 2008).

received a response in over 30 days to a previous Request to Staff on that subject. S.R. Ex. 6.1 (Doc. No. 29-6) at 59-60; *see* Compl. at 13. The next day, Plaintiff received a response to his question about Passover meals. *See* S.R. Ex. 6.1 (Doc. No. 29-6) at 61. Plaintiff, however, filed Grievance No. 2011-145, requesting that all informal requests, grievances, and appeals be "responded to according to the relevant policies and deadlines." *Id.* at 57. This Grievance was returned unanswered on the ground that Plaintiff had not attempted to resolve that particular issue informally prior to filing the Grievance. *Id.* at 56; *see also* CCA-DCF Policy 14.5 § K. There is no evidence or contention that Plaintiff submitted an appeal or sought further relief on this issue. *See* Aff. of Johnanna Oglesby, DCF Special Report Coordinator ("Oglesby Aff.") S.R. at 27; Aff. of Terry Underwood, DCF Grievance Coordinator ("Underwood Aff.") (Defs.' MSJ Ex. 1 (Doc. No. 35-1)); OP-090124 § X(B).

### b. *Grievance No. 2011-1001-00283-G*

Plaintiff submitted a Request to Staff requesting honey packets for celebration of Rosh Hashanah. The request was refused because DCF was on lockdown. S.R. Ex. 6.2 (Doc. No. 30-1) at 31; *see* Compl. at 13. Plaintiff then filed a Grievance, requesting only that a specific chaplain be instructed "to stop denying [Plaintiff's] First [A]mendment right to practice [h]is religion." S.R. Ex. 6.2 (Doc. No. 30-1) at 29. This generic Grievance was granted. *See* S.R. Ex. 6.2 (Doc. No. 30-1) at 28-30. There is no evidence or contention that Plaintiff sought further relief. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 §§ V(A)(7).

*c. Grievance Nos. 2011-1001-00367-D and 2011-1001-00400-G*

On November 7, 2011, Plaintiff submitted a Request to Staff regarding the prison staff's allegedly non-kosher handling of butter during Passover. Following the prison's response on November 14, 2011, Plaintiff on December 2, 2011, submitted a Grievance. S.R. Ex. 6.3 (Doc. No. 31-1) at 3-5; *see* Compl. at 12-14. The Grievance was returned unanswered for being submitted more than 15 days after the incident. S.R. Ex. 6.3 (Doc. No. 31-1) at 2; *see* OP-090124 § V(A)(1).

Plaintiff then filed a new Request to Staff, and consequent Grievance, specifying dates of the incident as December 1-2, 2011. S.R. Ex. 6.3 (Doc. No. 31-1) at 12-13. Plaintiff's Grievance was returned unanswered on December 21, 2011, due to Plaintiff's failure to submit proper documentation while being subject to grievance restriction. *Id.* at 11; *see also* OP-090124 § IX(B)(2)(a).[10] Plaintiff expressly was given 10 days from his receipt of the notice of decision to properly resubmit the Grievance. S.R. Ex. 6.3 (Doc. No. 31-1) at 11; *see also* OP-090124 §§ V(A)(7), IX(B)(2)(c). Plaintiff received the notice on December 22, 2011, but did not resubmit the Grievance until January 23, 2012.[11] Plaintiff's resubmission was rejected as out of time. *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 10; OP-090124 §§ V(A)(1), V(A)(7), IX(B)(2)(d). There is no evidence or

---

[10] As stated elsewhere, Plaintiff was subject to grievance restriction from August 11, 2011, until September 9, 2013. *See* S.R. Ex. 6.2 (Doc. No. 30-1) at 11; S.R. Ex. 6.3 (Doc. No. 31-1) at 49, 59; S.R. Ex. 6.4 (Doc. No. 32-1) at 26, 39.

[11] The resubmitted Grievance does not itself appear in the record, but Defendants have presented a summary spreadsheet that reflects that the Grievance was not resubmitted until January 23, 2012. *See* Grievance Spreadsheet (Defs.' MSJ Ex. 5) at 4; Oglesby Aff.; Underwood Aff. Plaintiff does not dispute the resubmission date.

contention by Plaintiff that he sought further relief on this issue. *See* Oglesby Aff.; Underwood Aff.

### d. Grievance No. 2012-1001-00275-G

Plaintiff filed a Request to Staff requesting that kosher foods ordered for Passover not be removed from their original containers when served to inmates. S.R. Ex. 6.3 (Doc. No. 31-1) at 45; *see* Compl. at 14. Plaintiff submitted a Grievance raising this same issue and also requesting that any additional food needed for Passover be purchased from local delis "as done in the past." S.R. Ex. 6.3 (Doc. No. 31-1) at 44, 46-47. The Grievance was returned unanswered for grieving multiple issues, with express permission to resubmit a corrected version to the Reviewing Authority within 10 days. *Id.* at 43; *see* OP-090124 § V(A)(7). There is no evidence that Plaintiff resubmitted the Grievance or sought additional relief on this complaint. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 §§ V(A)(7), VI(B)(6).

### e. Grievance No. 2012-1001-00338-G

Plaintiff's next Request to Staff complained that non-Kosher lettuce was being served; Plaintiff's follow-on Grievance added a complaint regarding the non-kosher nature of the facility's kitchen itself. S.R. Ex. 6.3 (Doc. No. 31-1) at 76-79; *see* Compl. at 13-15. The Grievance was returned unanswered for grieving multiple issues, with express permission to resubmit a corrected version to the Reviewing Authority. S.R. Ex. 6.3 (Doc. No. 31-1) at 75. Plaintiff then resubmitted the Grievance, focusing this time upon the purported problems with the "Kitchen Kosher Protocol" and suggesting that a

Kosher Food Inspector be consulted. *Id.* at 74. Following denial of the Grievance on the merits, Plaintiff filed a Grievance Appeal (No. 12-3311). *Id.* at 70-73.

Plaintiff's Grievance Appeal was returned unanswered on June 27, 2012, on two stated grounds. First, the ARA stated that "grievance appeals must be accompanied by an affidavit." *See id.* at 69. However, this is not a correct characterization of the requirements of OP-090124, and rejection by the ARA based solely upon a lack of an affidavit on appeal would not be authorized. Although an inmate who is subject to grievance restriction must submit the requisite affidavit with his or her *grievance*, there is no corresponding affidavit requirement for a *grievance appeal*. *Compare* OP-090124 § IX(B)(2)(a), *with* OP-090124 § VII; *see also Burnett*, 437 F. App'x at 743 (finding that a previous version of OP-090124 "impose[d] no additional requirements for grievance appeals submitted by prisoners on grievance restriction").

Nevertheless, the ARA's rejection was also predicated upon: "Inmate on grievance restriction and/or proper documentation not included." *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 69. Under the version of OP-090124 in effect at that time,[12] the ARA had the authority to reject an appeal based upon an inmate's failure to adhere to grievance-restriction requirements at the grievance level: "The Administrative Review Authority has the authority to return *grievances* and grievance appeals unanswered when they contain more than one issue or *when they fail to be filed in accordance with this procedure*." OP-

---

[12] The version of OP-090124 that is relevant to the majority of Plaintiff's exhaustion efforts (and to Plaintiff's efforts where the ARA's authority in this area is relevant) took effect May 24, 2011. *See* Defs.' MSJ Ex. 2, at 2.

090124 § VII(B)(1)(e) (emphasis added); *see also* OP-090124 § VII(B)(5) (stating under the heading "Appeal Process and Procedure: Final Appeal to Administrative Review Authority or Chief Medical Officer": "*Grievances* and grievance appeals which present more than one issue or *which are not filed in accordance with this procedure* will be returned unanswered" (emphasis added)); *Sharp v. GEO Grp.*, No. CIV-10-622-W, 2011 WL 2746118, at *4 n.4 (W.D. Okla. June 6, 2011) (noting that version of OP-090124 effective May 24, 2011, gives ARA authority to return a grievance unanswered when it discerns a procedural defect in that underlying grievance). Thus, although under previous iterations of OP-090124 the ARA could not "peel the onion" to reject an appeal based upon uncorrected defects below, *see, e.g.*, *Burnett*, 437 F. App'x at 743-44, the version of OP-090124 applicable to Plaintiff's Grievance Appeal No. 12-3311 authorized just this action. *See* OP-090124 §§ VII(B)(1)(e), VII(B)(5).

Here, Plaintiff's grievance-level documentation was deficient in several respects. Plaintiff's affidavit was not "made under penalty of discipline for lying to staff." *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 77-78; OP-090124 § IX(B)(2)(a). Further, the affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken as late as April 27, 2012, but the most recent notarization on that document was dated March 23, 2012. *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 78. The ARA therefore was authorized to reject Plaintiff's Grievance Appeal for grievance restriction/documentation issues. *See id.* at 69; OP-090124 §§ VII(B)(1)(e), VII(B)(5).

### f.   Grievance No. 2012-1001-00455-G

Plaintiff complained in a Request to Staff and Grievance that he had received watery, non-kosher tuna on a food tray.  S.R. Ex. 6.4 (Doc. No. 32-1) at 22-24; *see* Compl. at 14.  The Reviewing Authority returned Plaintiff's first Grievance unanswered due to failure to include proper grievance-restriction documentation.  S.R. Ex. 6.4 (Doc. No. 32-1) at 21-22, 24; *see* OP-090124 § IX(B)(2).  Upon resubmission, Plaintiff's Grievance was addressed on the merits.  S.R. Ex. 6.4 (Doc. No. 32-1) at 14-15, 17-19. There is no evidence or contention that Plaintiff appealed or otherwise continued to seek relief on this issue.  *See* Oglesby Aff.; Underwood Aff.

### g.   Grievance No. 2012-1001-00508-G

Plaintiff next submitted a Request to Staff and Grievance that complained of DCF staff's failure to adhere to kosher protocol in preparing rice.  S.R. Ex. 6.4 (Doc. No. 32-1) at 45-50; *see* Compl. at 14.  Due to Plaintiff's failure to include all required information regarding each grievance listed on his grievance-restriction affidavit, this Grievance was returned unanswered with express permission to resubmit a corrected version within 10 days.  S.R. Ex. 6.4 (Doc. No. 32-1) at 44 (stating that Plaintiff "failed to include grievance number, date, description, and disposition at each level" on the affidavit); *see id.* at 48-50 (Doc. No. 32-1); OP-090124 §§ V(A)(7), IX(B)(2)(c).  Rather than resubmitting within the allowed time, Plaintiff filed Grievance Appeal No. 13-0414.  S.R. Ex. 6.4 (Doc. No. 32-1) at 34, 36-38, 40-41.  The appeal was returned unanswered on September 10, 2012, due to Plaintiff's repeated submission of "grievances and appeals" with procedural defects and failure to follow ODOC Grievance Policy.  *Id.* at 39.  The

ARA's communication placed Plaintiff on grievance restriction until September 9, 2013. *Id.* at 39.

The ARA was authorized to reject Plaintiff's appeal based upon the uncured procedural defects of the grievance-restriction affidavit. *See* OP-090124 §§ VII(B)(1)(e), VII(B)(5). For example, the Reviewing Authority's rejection was valid with respect to the grievance-restriction affidavit's description of Grievance No. 2012-1001-00338-G: instead of providing the final disposition of the Grievance as required by OP-090124 § IX(B)(a), the affidavit (dated June 6, 2012) simply noted that Plaintiff had been given 10 additional days to resubmit that Grievance on May 22, 2012 (15 days earlier). *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 50. Further, Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the Grievance were "true and correct to the best of the offender's knowledge." *See id.* at 48-50; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as August 17, 2012, but the most recent notarization on that document was dated June 6, 2012. *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 50. In addition, Plaintiff arguably had waived his opportunity to pursue relief on this complaint by failing to resubmit his Grievance properly as instructed by the Reviewing Authority. *See* OP-090124 §§ V(A)(7), VI(B)(6); S.R. Ex. 6.4 (Doc. No. 32-1) at 44.

### h. Grievance No. 2012-1001-00509-G

Plaintiff filed a Request to Staff, and then a Grievance, regarding uncooked grits and kosher standards. S.R. Ex. 6.4 (Doc. No. 32-1) at 52-57; *see* Compl. at 14. The

Grievance was returned unanswered because of deficiencies in Plaintiff's grievance-restriction affidavit. S.R. Ex. 6.4 (Doc. No. 32-1) at 51, 55-57. The evidence in the record supports a finding that Plaintiff did not resubmit the Grievance, though expressly allowed to do so by the Reviewing Authority, and did not attempt to appeal to the ARA. *Id.* at 51; *see also* OP-090124 §§ V(A)(7), VI(B)(6); Oglesby Aff.; Underwood Aff.

### i. Grievance No. 2012-1001-00511-G

Plaintiff complained in a Request to Staff that he had been served non-kosher spoiled milk. S.R. Ex. 6.4 (Doc. No. 32-1) at 71-72; *see* Compl. at 14. The resultant Grievance was returned unanswered, though with express leave to resubmit a corrected version, because Plaintiff requested multiple forms of relief therein and did not submit proper grievance-restriction documentation to the Reviewing Authority. S.R. Ex. 6.4 (Doc. No. 32-1) at 68-70, 73-75. Plaintiff did not resubmit the Grievance but instead filed Grievance Appeal No. 13-0417. *Id.* at 64-67. The appeal was returned unanswered due to Plaintiff's repeated deficient "grievances and appeals" and failure to follow ODOC Grievance Policy. *Id.* at 63. In duplication of the ARA's action taken in Grievance Appeal No. 13-0414, Plaintiff was placed on grievance restriction until September 9, 2013. *Id.*; *see supra* Part II(D)(1)(g).

The ARA was authorized to reject Plaintiff's appeal based upon the uncured procedural defects of the underlying Grievance and grievance-restriction affidavit. *See* OP-090124 §§ VII(B)(1)(e), VII(B)(5). Plaintiff failed to remedy the fact that his Grievance sought relief on more than one issue, which was a basis for the Reviewing Authority's rejection. *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 68-70; OP-090124 §§ V(A)(4),

V(A)(7), VI(A)(2)(e), VI(B)(6), VII(B)(1)(e), VII(B)(5). Further, Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 73-75; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as August 17, 2012, but the most recent notarization on that document was dated June 6, 2012. *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 75. Finally, Plaintiff arguably had waived his opportunity to pursue relief on this complaint by failing to resubmit his Grievance properly as per the Reviewing Authority's instructions. *See id.* at 68 (Doc. No. 32-1); OP-090124 §§ V(A)(7), VI(B)(6).

### *j. Grievance No. 2012-1001-00512-G*

Plaintiff filed a Request to Staff and Grievance with complaints regarding a type of food called Purna that allegedly was not served in accordance with kosher standards. S.R. Ex. 6.5 (Doc. No. 33-1) at 13-18; *see* Compl. at 14. Plaintiff's Grievance was returned unanswered because Plaintiff did not submit the proper documentation required by his placement on grievance restriction. S.R. Ex. 6.5 (Doc. No. 33-1) at 12; *see also id.* at 15-18. Plaintiff did not correct and resubmit his Grievance within 10 days as expressly contemplated; rather, Plaintiff appealed to the ARA (No. 13-0416). *See id.* at 8-11. The appeal was returned unanswered due to Plaintiff's continued procedurally defective "grievances and appeals" and failure to follow ODOC Grievance Policy. *Id.* at 7.

Plaintiff again was advised that he was placed on grievance restriction until September 9, 2013. *Id.* at 7.

The ARA was authorized to reject Plaintiff's appeal based upon the uncured procedural defects of the grievance-restriction affidavit, which likewise had served as a basis for rejection by the Reviewing Authority. *See id.* at 7, 12, 15-18; OP-090124 §§ VII(B)(1)(e), VII(B)(5). Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 15-18; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as August 17, 2012, but the latest notarization on that document was dated June 6, 2012. *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 18. Finally, Plaintiff arguably had waived his opportunity to pursue relief on this complaint by failing to resubmit his Grievance properly as per the Reviewing Authority's instructions. *See id.* at 12; OP-090124 §§ V(A)(7), VI(B)(6).

### k.  Grievance No. 2012-1001-0522-G

Plaintiff's Request to Staff of August 21, 2012, asked that the "new so-called 'Kosher' menu" be discontinued immediately and replaced with a true kosher menu. S.R. Ex. 6.5 (Doc. No. 33-1) at 44-45; *see* Compl. at 13-15. Upon denial of this request, Plaintiff filed a Grievance seeking similar but more detailed relief. *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 42-43, 46-48. The Grievance was returned unanswered because Plaintiff failed to submit the proper grievance-restriction documentation. *Id.* at 41; *see*

*also id.* at 46-48. Plaintiff did not correct and resubmit the Grievance, although expressly authorized to do so by the Reviewing Authority. Instead, Plaintiff appealed to the ARA, and the ARA in turn rejected the Grievance Appeal for grievance-restriction and/or documentation deficiencies. *Id.* at 40, 41.

The ARA's rejection was authorized by OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon Plaintiff's failure to correct the underlying deficiencies associated with his Grievance. *See also* OP-090124 § IX(B)(2)(a). Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the Grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 46-48; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as September 18, 2012, but the latest notarization on that document was dated June 6, 2012. *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 48. Finally, Plaintiff arguably had waived his opportunity to pursue relief on this complaint by failing to resubmit his Grievance properly as per the Reviewing Authority's instructions. *See id.* at 41; OP-090124 §§ V(A)(7), VI(B)(6).

*l. Emergency Grievance No. 2012-1001-00608-G*

Plaintiff's Emergency Grievance sought a return to the facility's prior version of the kosher meal plan or an explanation of the change in, and justification for, the new meal plan. S.R. Ex. 6.6 (Doc. No. 34-1) at 21; *see* Compl. at 13-15. The Reviewing Authority returned the Emergency Grievance with the notation: "We are within state/federal guidelines for the kosher meal menu." S.R. Ex. 6.6 (Doc. No. 34-1) at 20.

Plaintiff's Grievance Appeal was returned unanswered based upon: (1) lack of affidavit; (2) grievance-restriction/documentation deficiencies; and (3) the issue not being of an emergency/sensitive nature. *Id.* at 19. The ARA directed Plaintiff to follow the standard grievance process. *Id.*

The ARA's rejection was not warranted to the extent it was based on any failure to submit a grievance-restriction affidavit at the appellate level. *See supra* Part II(D)(1)(e). The ARA's disposition of the appeal was nevertheless authorized because (1) there is no evidence in the record to indicate that Plaintiff submitted a grievance-restriction affidavit with the Emergency Grievance, as required by OP-090124 §§ IX(B)(2) and VIII; and (2) the ARA was authorized under OP-090124 §VIII(C) to determine that an appeal is not of an emergency/sensitive nature and to return the appeal on that basis. There is no contention or indication from the record that Plaintiff properly followed the standard grievance process upon rejection of the appeal as contemplated by the ARA's response and by OP-090124 § VIII(D). *See* Oglesby Aff.; Underwood Aff.

## 2. Free Exercise Claim

### a. Grievance Nos. 11-14 and 11-78

Plaintiff asserts that in November 2011, DCF began preventing him and other DCF Jewish inmates from wearing yarmulkes at times other than during religious services, in contravention of earlier policy or practice at DCF. *See* Compl. at 17. Plaintiff filed "Emergency" Grievance No. 11-14 to this effect; the Grievance was returned several days later with the notation that the submission was not of a sensitive/emergency nature. S.R. Ex. 6.1 (Doc. No. 29-6) at 2-6; *see also* DCF-CCA

Policy 14-5 §§ L(2)(a), M(2)(d). Attached to the returned filing, however, was a memo addressed to Plaintiff from Defendant Wideman, the DCF Chaplain, explaining that ODOC policy permitted religious headwear during religious events and that any policy put in place previously was no longer relevant. S.R. Ex. 6.1 (Doc. No. 29-6) at 6. There is no contention or record evidence that Plaintiff sought further relief from this disposition. *See* Oglesby Aff.; Underwood Aff.

Plaintiff then submitted a Request to Staff on the yarmulke issue, followed by Grievance No. 11-78. S.R. Ex. 6.1 (Doc. No. 29-6) at 21-24. The Reviewing Authority largely denied Plaintiff any relief on June 14, 2011; Plaintiff signed for his receipt of the Grievance Response on June 15, 2011. *Id.* at 20; *see* OP-090124 § VI(B)(4). Plaintiff's appeal was received by the ARA (Grievance Appeal No. 11-2066(1)) on June 23, 2011. S.R. Ex. 6.1 (Doc. No. 29-6) at 16, 18-19. That same day, the ARA returned the Grievance Appeal unanswered for being presented on an incorrect form but explicitly instructed Plaintiff which form was required and also granted 10 days for resubmission. *Id.* at 17-19 (reflecting that the Grievance Appeal was submitted on a then-obsolete version of Form DOC 060125V); *see also* OP-090124 §§ VII(B)(1)(a), VII(B)(1)(e), VII(B)(5), XIV. Plaintiff's resubmitted Grievance Appeal (No. 11-2066(2)) was received by the ARA on July 1, 2011, but Plaintiff again failed to use the current version of the appeal form. S.R. Ex. 6.1 (Doc. No. 29-6) at 12, 14-15. The Grievance Appeal was returned unanswered not only on that basis, but also for being out of time and for Plaintiff's failure to sign and date all appropriate spaces on the appeal form. *Id.* at 13.

It is not expressly provided in the ODOC Grievance Process that the ARA may reject an appeal based on the offender's failure to use the current version of the appeal form, although such a conclusion is a reasonable interpretation and application of the following provisions: (1) the specific requirement in OP-090124 § VII(B)(1)(a) that "[t]he offender will submit only the 'Misconduct/Grievance Appeal Form to Administrative Review Authority' (DOC 060125V)"; (2) the specific inclusion of this form in the "Referenced Forms" of OP-090124 § XIV; and (3) the authority granted to the ARA to return grievance appeals unanswered "when they fail to be filed in accordance with this procedure" or "which are not filed in accordance with this procedure." *See* OP-090124 §§ VII(B)(1)(e), VII(B)(5); *cf. Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (recognizing prison officials' ability to rely upon a "reasonable interpretation" of grievance requirements). Even assuming such action would be unauthorized, however, the ARA's ultimate rejection of Grievance Appeal No. 11-2066(2) clearly was authorized, based upon the ARA's additional stated reasons: (1) Plaintiff's failure to file a procedurally-compliant and timely appeal (i.e., within 15 days of receipt of the Reviewing Authority's response on June 14, 2011); and (2) Plaintiff's failure to properly complete the form (whatever the version) upon which the appeal was submitted. *See* S.R. Ex. 6.1 (Doc. No. 29-6) at 13-15 (reflecting that Plaintiff's appeal was received July 1, 2011, and that Plaintiff failed to fill out the top portion of the appeal form entirely and to sign and date the form where required); OP-090124 §§ VII(B), VII(B)(1)(a), VII(B)(1)(e), VII(B)(5). *See generally* OP-090124 § XII(E) (stating that there is no mailbox rule with regard to grievances and grievance appeals).

Plaintiff next filed a Request to Staff requesting that his grievance appeals be returned by the ARA accompanied by additional information—the grievance number used by DCF at the facility level. He then filed Grievance Appeal No. 12-2066 again raising the issue of when yarmulkes may be worn and again using the outdated appeal form. S.R. Ex. 6.1 (Doc. No. 29-6) at 7, 9-11. The ARA returned the Grievance Appeal unanswered, referring Plaintiff to his duplicative, already disposed-of Grievance No. 11-78 regarding the yarmulke complaint and noting, relevant to Plaintiff's new complaint about the numbering system, that pursuant to ODOC Policy the inmate receives a copy of the ARA's response only. *See id.* at 8; *accord* ODOC 09-01024 § VII(B)(4) (not requiring any additional number to be added to a response to a Grievance Appeal). The ARA's rejection was authorized under OP-090124, and there is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal on the proper form or to otherwise seek further relief on this complaint. *See* Oglesby Aff.; Underwood Aff.; OP-090124 §§ VI(B)(6), VII(A), VII(B)(1)(e), VII(B)(5).

### b. *Grievance No. 11-139*

Plaintiff submitted a Request to Staff, and consequent Grievance, complaining that he was being denied challah bread for certain Jewish religious meals and festivals. S.R. Ex. 6.1 (Doc. No. 29-6) at 41-42; *see* Compl. at 18. The Grievance was denied on June 12, 2011, and received by Plaintiff on June 15, 2011. S.R. Ex. 6.1 (Doc. No. 29-6) at 40. Plaintiff appealed (No. 11-2067) to the ARA on June 23, 2011. *Id.* at 36, 38-39. This Grievance Appeal was returned unanswered due to being on an improper (i.e., outdated) appeal form, but Plaintiff was expressly provided the opportunity to resubmit a corrected

version within 10 days. *Id.* at 37. Plaintiff resubmitted the appeal on July 1, 2011, but again failed to use the correct form. *Id.* at 32, 34-35. The Grievance Appeal was returned unanswered both on that basis and because "[d]ue to [Plaintiff's] continued failure to properly file this appeal, [Plaintiff is] now out of time." *See id.* at 33; OP-090124 §§ VII(B)(1)(a), VII(B), VII(B)(1)(e), VII(B)(5), XIV. In addition to these deficiencies, the Grievance Appeal reflects that Plaintiff failed to complete the entire form that he used, as required by ODOC grievance procedure. *See* S.R. Ex. 6.1 (Doc. No. 29-6) at 34; OP-090124 §§ VII(B)(1)(a), VII(B)(1)(e), VII(B)(5). There is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to otherwise seek further relief on this complaint. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP090124 § VII(B)(1)(e).

### c. *Grievance No. 11-141*

Plaintiff submitted an informal request and then Grievance No. 2011-141, requesting a specific one-hour time slot to observe the Counting of the Omer from April 19 to June 9, 2011. S.R. Ex. 6.1 (Doc. No. 29-6) at 52-55; *see* Compl. at 24; CCA-DCF Policy 14.5 §§ K, M. After receiving the denial of this Grievance on June 23, 2011, Plaintiff filed Grievance Appeal No. 12-2067 on July 7, 2011. S.R. Ex. 6.1 (Doc. No. 29-6) at 47, 49-51. This appeal was returned unanswered on July 14, 2011, as lacking all required signatures/dates and because Plaintiff, due to his continued failure to properly file the Grievance, was now out of time. *Id.* at 48. Although the appeal was timely in the sense that it was filed fewer than 15 days after Plaintiff received the Grievance response on June 23, 2011, the ARA's rejection on timeliness grounds was warranted with regard

to the *substance* of Plaintiff's request: by the time Plaintiff filed his appeal on July 7, 2011, the Counting of the Omer about which he sought relief (occurring from April 19 to June 9, 2011) had passed. *See id.* at 47-48, 51-55. In any event, Plaintiff did not sign the appeal form where required, and thus, the ARA's rejection was authorized on this basis. *See id.* at 48-49; OP-090124 §§ VII(B)(1)(e), VII(B)(5).

On September 15, 2011, Plaintiff requested to submit another appeal of Grievance No. 11-141 out of time. S.R. Ex. 6.1 (Doc. No. 29-6) at 45-46. This request (No. 12-2067(2)) was denied because Plaintiff had failed to abide by the requirement that such a request be submitted within 30 days of the ARA's denial of a grievance as untimely. *Id.* at 44. Because OP-090124 § XII(B) imposes a 30-day time limit for such requests, and Plaintiff's request was not submitted until 63 days after the ARA's denial, *see id.* at 43-45, 47-48, the ARA's rejection of Plaintiff's request was authorized.

### d. Grievance No. 2011-169

Plaintiff filed a Request to Staff and then a Grievance seeking the address of a Rabbi Hayman, who allegedly approved the DCF Passover menu, in order to ask questions regarding kosher meals. S.R. Ex. 6.1 (Doc. No. 29-6) at 69-70; *see* Compl. at 22; Pl.'s MSJ Br. Ex. 5. The Grievance was returned unanswered because Plaintiff failed to attach the required proof of informal resolution, but was also denied on the merits. The form that was returned to Plaintiff stated: "There is nothing in policy/procedure that entitled the Grievant to the requested information." S.R. Ex. 6.1 (Doc. No. 29-6) at 68. Plaintiff filed an appeal (No. 12-2034), and the ARA found "a need for further investigation and an amended response from your facility." *Id.* at 67. The ARA directed

the Reviewing Authority to investigate and respond to the Grievance within 15 days and to forward the revised response to the ARA as well as to Plaintiff. *Id.*; *see also* OP-090124 § VII(C).

The Reviewing Authority subsequently issued a revised response to the Grievance, denying Plaintiff's request because "access to information relative to the rabbi" is restricted by OP-030112.[13]  S.R. Ex. 6.1 (Doc. No. 29-6) at 66.  Plaintiff appealed the Revised Grievance Response (No. 12-2034), but his Grievance Appeal was rejected because Plaintiff had altered the appeal form. *Id.* at 62-65.

Review of this Grievance Appeal confirms that Plaintiff added words and a line to the appeal form. *See id.* at 64.  While the alteration was minimal, the ARA was authorized to reject the appeal on that basis. *See* OP-09124 §§ VII(B)(1)(a), VII(B)(1)(e), VII(B)(5), VII(C)(4); *cf.* OP-090124 §§ III(H), V(A).  In any event, there is no evidence or contention that Plaintiff attempted to resubmit the returned appeal or to

---

[13] The language quoted in the Revised Grievance Response is identical to that appearing in the current version of ODOC Facility Operations Memo OP-030112 § II(B)(6) (publicly available through http://www.ok.gov/doc):

> Offenders are not allowed access to any personal information or any materials containing home addresses, social security numbers or other personal information pertaining to any staff member or volunteer. . . .
>
> > a. Religious volunteers may provide business or church addresses and phone numbers.  Facility heads may approve exceptions for the facility with written justification, such as those individuals assigned to provide reentry services.
> >
> > b. Exceptions for all facilities may be granted to ministers/religious leaders/clergy through a request to the director.  Such requests will include a written justification.

otherwise seek further relief.  *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).

### e.  Grievance No. 2011-1001-00011-G

Plaintiff filed a Request to Staff, and then a Grievance, requesting that nonalcoholic wine be provided for certain religious festivals and services.  S.R. Ex. 6.2 (Doc. No. 30-1) at 7-8; *see* Compl. at 18.  Plaintiff's Grievance was denied based upon an ODOC Policy that, while permitting grape juice to be used in religious services, required it to be carried in and out of the facility by a volunteer and removed from the premises after the service.  S.R. Ex. 6.2 (Doc. No. 30-1) at 6, 9.  Plaintiff submitted a Grievance Appeal (No. 12-123), but it was rejected because Plaintiff had not properly completed the appeal form.  *Id.* at 2-5.  Plaintiff was afforded an opportunity to correct and resubmit the appeal within 10 days.  *Id.* at 3.

The ARA's rejection was authorized because Plaintiff improperly typed in extra verbiage and an additional line with numbers into the appeal form, rather than using the line provided.  *See id.* at 4; OP-090124 §§ VII(B)(1)(a), VII(B)(1)(e), VII(B)(5); *cf.* OP-090124 §§ III(H), V(A).  In any event, there is no contention or evidence in the record that Plaintiff resubmitted the appeal as per the ARA's instructions or otherwise sought further relief.  *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).

### f.  Grievance No. 2011-1001-00035-G

Plaintiff filed a Request to Staff and then a Grievance requesting that he not be required to sign his name when he received his meals on Shabbat (the Jewish day of rest).  S.R. Ex. 6.2 (Doc. No. 30-1) at 17-18; *see* Compl. at 21, 23.  Although Plaintiff's request

was granted by the Reviewing Authority, Plaintiff appealed. S.R. Ex. 6.2 (Doc. No. 30-1) at 10, 12-14, 16. This Grievance Appeal (No. 12-166) was returned unanswered by the ARA on August 15, 2011, because Plaintiff had again inserted additional verbiage onto the form. *Id.* at 10-15. The ARA also notified Plaintiff by letter that, as a result of the continued procedural defects and failure to follow the instructions of OP-090124, Plaintiff was placed on grievance restriction until August 10, 2012. *Id.* at 11; *see* OP-090124 § IX.

The ARA's rejection was authorized because Plaintiff improperly altered the appeal form. S.R. Ex. 6.2 (Doc. No. 30-1) at 12; *see* OP-090124 §§ VII(B)(1)(a), VII(B)(1)(e), VII(B)(5); *cf.* OP-090124 §§ III(H), V(A). In any event, there is no contention or evidence in the record that Plaintiff attempted to resubmit the appeal or otherwise seek further relief. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).

### g. *Grievance No. 2011-1001-00099-G*[14]

Plaintiff filed a Request to Staff and Grievance with multiple requests regarding fasting, grape juice, and candles for religious observance. S.R. Ex. 6.2 (Doc. No. 30-1) at

---

[14] According to an affidavit submitted by Defendant Terry Underwood, who is the DCF Grievance Coordinator, Plaintiff submitted another grievance on the same date, also regarding "Religious/Candles," that was catalogued as Number 2011-1001-00097-G. Underwood Aff. Defendants' spreadsheet reflects that the Grievance was returned unanswered and no appeal was lodged. *See* Grievance Spreadsheet at 3. Defendant Underwood states that he was unable to retrieve this particular Grievance but has no reason to believe that the information in the spreadsheet is inaccurate. *See* Underwood Aff. Plaintiff has not disputed Defendant Underwood's account of events or presented evidence reflecting that an appeal was taken from Grievance No. 2011-1001-00097-G.

20-21; *see* Compl. at 18, 21, 23-24.  The Grievance was returned unanswered because, among other things: Plaintiff had not completed all of the required blanks on the Request to Staff form; Plaintiff had typed in additional verbiage on the Request to Staff form; and Plaintiff's Request to Staff was not specific as to "the complaint, dates, places, personnel involved and how the offender was affected."  S.R. Ex. 6.2 (Doc. No. 30-1), at 19 (emphasis omitted); *see id.* at 20-21; OP-090124 §§ III(H), IV(B)(1), V(A), VI(A)(2)(d), VI(B)(6).  There is no contention or evidence that Plaintiff resubmitted the Grievance or sought additional relief on these requests.  *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 §§ V(A)(7), VI(B)(6).

### h.  Grievance No. 2011-1001-00144-D

Plaintiff sought in a Request to Staff and a Grievance that a memo be issued allowing Jewish offenders at DCF to wear their religious undergarments and headwear immediately after strip searches.  S.R. Ex. 6.2 (Doc. No. 30-1) at 23-25; *see* Compl. at 24.  Plaintiff's Grievance was returned unanswered for procedural defects.  S.R. Ex. 6.2 (Doc. No. 30-1) at 26.  Nevertheless, Plaintiff also received a denial of his Grievance on the merits.  *Id.* at 22.  There is no contention or evidence that Plaintiff resubmitted the Grievance or sought additional relief on this complaint.  *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 §§ V(A)(7), VI(B)(6).

### i.  Grievance No. 2012-1001-00135-G

Plaintiff filed a Request to Staff and Grievance, requesting that the DCF Chaplain conduct a group meeting with DCF Jewish inmates to discuss Passover, Purim, and Aleph issues.  S.R. Ex. 6.3 (Doc. No. 31-1) at 28-31; *see* Compl. at 24, 27.  Plaintiff's

Grievance was denied on the merits, and there is no contention or evidence that Plaintiff sought additional relief on the request. S.R. Ex. 6.3 (Doc. No. 31-1) at 27; *see* Oglesby Aff.; Underwood Aff.

### j. Grievance No. 2012-1001-00136-G

Plaintiff filed a Request to Staff requesting that one of the members of the DCF Orthodox Jewish community be permitted to light Shabbat candles. S.R. Ex. 6.3 (Doc. No. 31-1) at 35; *see* Compl. at 20-21. Plaintiff's request was granted, but Plaintiff grieved the DCF officials' determination that a particular Jewish Orthodox inmate (who was not Plaintiff) would be permitted to light the candles. S.R. Ex. 6.3 (Doc. No. 31-1) at 33-34, 36. Plaintiff's Grievance was denied on the merits, and there is no contention or evidence that Plaintiff sought additional relief on the request. *Id.* at 27; *see* Oglesby Aff.; Underwood Aff.

### k. Grievance No. 2012-1001-00246-G

Plaintiff filed a Request to Staff and Grievance regarding the removal of grape juice from DCF's order of Passover supplies. S.R. Ex. 6.3 (Doc. No. 31-1) at 39-42; *see* Compl. at 23. The Reviewing Authority answered on April 3, 2012, that a volunteer had been arranged to provide grape juice and thus granted Plaintiff's request. S.R. Ex. 6.3 (Doc. No. 31-1) at 38. Plaintiff nonetheless appealed (No. 12-2879); this Grievance Appeal was returned unanswered on May 2, 2012, for being out of time and for failing to comply with grievance restriction and/or documentation requirements. *Id.* at 37.

Because the exact dates that Plaintiff first received the response to the Grievance, and that Plaintiff submitted the Grievance Appeal thereon, are not clear from the

materials submitted by the parties,[15] the record does not conclusively establish that Plaintiff's appeal was filed more than 15 days from receipt of the Grievance response, as would make it untimely. *See id.* at 37-38; OP-090124 § VII(B). The ARA's rejection based upon grievance-restriction/documentation deficiencies was authorized, however, by OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon the underlying deficiencies associated with the Grievance. *See also* OP-090124 § IX(B)(2)(a). Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the Grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 41-42; OP-090124 § IX(B)(2)(a). There is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to otherwise seek further relief on this complaint. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP090124 § VII(B)(1)(e).

### l. *Grievance No. 2012-1001-00279-G*

Plaintiff filed a Request to Staff and Grievance, seeking—as he had with Grievance No. 11-41—a specific one-hour time slot to observe the Counting of the Omer. His request was denied at both preliminary levels. S.R. Ex. 6.3 (Doc. No. 31-1) at 53-57; *see* Compl. at 24. Plaintiff then submitted a Grievance Appeal (No. 12-2962), which was returned unanswered due to grievance restriction and/or documentation errors. S.R. Ex.

---

[15] Plaintiff signed for receipt of the grievance response on May 4, 2012, which is *after* the ARA disposed of the appeal of that same response on May 2, 2012. *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 37, 38.

6.3 (Doc. No. 31-1) at 49. Further, Plaintiff's grievance restriction was extended until May 8, 2013. *Id.*

There is no contention or evidence to support a finding that Plaintiff's Grievance—filed on April 19, 2012, while Plaintiff was subject to grievance restriction, *see* S.R. Ex. 6.2 (Doc. No. 30-1) at 11—was accompanied by a grievance-restriction affidavit as required. *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 53-57; OP-090124 § IX(B)(2). The ARA's disposition therefore was authorized, and there is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to seek further relief in any other manner. *See* Oglesby Aff.; Underwood Aff.; OP-090124 §§ VII(B)(1)(e), VII(B)(5).

### m. Grievance No. 2012-1001-00311-G

Plaintiff submitted a Request to Staff and Grievance, asking that he be permitted to eat certain meals in his unit after sundown on certain fasting days. S.R. Ex. 6.3 (Doc. No. 31-1) at 64-67; *see* Compl. at 21, 24. Plaintiff's request was granted in part, but he nonetheless submitted Grievance Appeal No. 12-2999. S.R. Ex. 6.3 (Doc. No. 31-1) at 58, 60-63. Plaintiff's appeal was returned unanswered due to grievance-restriction and/or documentation deficiencies. *Id.* at 59. Further, due to Plaintiff's "failure to submit an appeal and documentation as required for an offender on grievance restriction," Plaintiff's grievance restriction was extended until May 13, 2012. *Id.* at 59.

The ARA's rejection was authorized by OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon Plaintiff's failure to correct the underlying deficiencies associated with his Grievance. *See also* OP-090124 § IX(B)(2)(a). Plaintiff's affidavit was not "made under

penalty of discipline for lying to staff" and did not state that all contents of the grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.3 (Doc. No. 31-1) at 66-67; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as April 5, 2012, but the latest notarization on the document was dated March 23, 2012. *See id.* at 67. There is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to seek further relief in any other manner. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).

### n. Grievance No. 2012-1001-00367-G

Plaintiff next filed a Request to Staff and a Grievance, regarding the interruption of the Orthodox Jews' Shabbos service when non-Orthodox Jews entered the dining room. S.R. Ex. 6.4 (Doc. No. 32-1) at 5-8; *see* Compl. at 23, 25. The Reviewing Authority extended its response time in order to investigate, S.R. Ex. 6.4 (Doc. No. 32-1) at 4; *see* OP-090214 § V(C)(3), and then denied relief on the merits. S.R. Ex. 6.4 (Doc. No. 32-1) at 3. Plaintiff's Grievance Appeal No. 13-0021 was returned unanswered based on "grievance restriction and/or proper documentation not [being] included." *Id.* at 1.

The ARA's rejection was authorized by OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon Plaintiff's failure to correct the underlying deficiencies associated with his Grievance. *See also* OP-090124 § IX(B)(2)(a). Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the grievance

were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 6-7; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as April 27, 2012, but the latest notarization on the document was dated March 23, 2012. *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 7. In any event, there is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to seek further relief in any other manner. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).

### o. Grievance No. 2012-1001-00368-G

Plaintiff submitted a Request to Staff and Grievance, requesting that more time be allowed for inmates to move to the room designated for Shabbos service in order to set up before the service commenced. S.R. Ex. 6.4 (Doc. No. 32-1) at 10-12; *see* Compl. at 20, 23, 25. Plaintiff was granted relief on his Grievance, *see* S.R. Ex. 6.4 (Doc. No. 32-1) at 9, and there is no indication that he further pursued the issue with the Reviewing Authority or the ARA. *See* Oglesby Aff.; Underwood Aff.

### p. Grievance No. 2012-1001-00480-G

Plaintiff filed a Request to Staff and then a Grievance regarding the time scheduled for the Tisha B'Av fasting day in 2012 and more broadly requesting that the DCF Chaplain issue a memo to staff, at least one week in advance, regarding procedures for certain religious events. S.R. Ex. 6.4 (Doc. No. 32-1) at 28-32; *see* Compl. at 21, 23-24. Plaintiff's request for such memo was denied by the Reviewing Authority. S.R. Ex. 6.4 (Doc. No. 32-1) at 26. Thereafter, Plaintiff's Grievance Appeal (No. 13-0361) was

returned unanswered due to grievance restriction and/or lack of proper documentation. S.R. Ex. 6.4 (Doc. No. 32-1) at 27. On account of Plaintiff's "failure to comply with filing [his] grievance in accordance with requirements for an offender on restriction," Plaintiff's grievance restriction was extended until August 28, 2013. *Id.* at 26.

The ARA's rejection was authorized by OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon Plaintiff's failure to correct the underlying deficiencies associated with his Grievance. *See also* OP-090124 § IX(B)(2)(a). Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 30-32; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as June 26, 2012, but the latest notarization on the document was dated June 6, 2012. *See* S.R. Ex. 6.4 (Doc. No. 32-1) at 32. In any event, there is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to seek further relief in any other manner. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).

### q. Grievance No. 2012-1001-00513-G

Plaintiff filed a Request to Staff asking that certain actions in connection with the Month of Elul and the blast of the shofar. S.R. Ex. 6.5 (Doc. No. 33-1) at 28; *see* Compl. at 21, 23-25. After receiving a response that simply stated "previously addressed," Plaintiff filed a Grievance asking for various relief—including that all inmates receive copies of certain scheduling memos. S.R. Ex. 6.5 (Doc. No. 33-1) at 26-27, 29-31; *see*

Compl. at 24. This Grievance was returned unanswered with the notation: "The issue of providing memos to offenders was addressed in Grievance No.: 2012-1001-00480-G." S.R. Ex. 6.5 (Doc. No. 33-1) at 25; *see also supra* Part II(D)(2)(p). On appeal (No. 13-0484), the ARA returned Plaintiff's submission unanswered, citing grievance restriction and/or documentation issues and advising Plaintiff: "Mr. Smith, from this day forward, this office (Administrative Review Authority) will not respond to you in regard to any appeal not submitted correctly and in accordance with OP-090124 requirements pertaining to offenders on grievance restriction." S.R. Ex. 6.5 (Doc. No. 33-1) at 24.

While the ARA's explanation could have been clearer, the ARA was authorized to reject this Grievance Appeal pursuant to OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon Plaintiff's failure to correct the underlying deficiencies associated with his Grievance. *See also* OP-090124 § IX(B)(2)(a). Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the Grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 29-31; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as August 17, 2012, but the latest notarization on the document was dated June 6, 2012. *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 31. In any event, there is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to seek further relief in any other manner. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).

*r.   Grievance No. 2012-1001-00514-G*

Plaintiff sought to teach a weekly Hebrew language class at DCF in a Request to Staff.  S.R. Ex. 6.5 (Doc. No. 33-1) at 36; *see* Compl. at 20.  After his informal request was denied, Plaintiff filed a Grievance, which was returned unanswered due to "grievance restriction, proper documentation not included," but with express permission to resubmit a corrected version.  S.R. Ex. 6.5 (Doc. No. 33-1) at 33-35, 37-39.  Rather than resubmit, Plaintiff appealed.  *Id.* at 32.  Plaintiff's Grievance Appeal was returned unanswered based on deficiencies related to grievance restriction and/or proper documentation.  *Id.*

The ARA's rejection was authorized by OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon Plaintiff's failure to correct the underlying deficiencies associated with his Grievance.  *See also* OP-090124 § IX(B)(2)(a).  Plaintiff's affidavit was not "made under penalty of discipline for lying to staff" and did not state that all contents of the Grievance were "true and correct to the best of the offender's knowledge."  *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 37-39; OP-090124 § IX(B)(2)(a).  The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as August 17, 2012, but the latest notarization on the document was dated June 6, 2012.  *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 39.  There is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to seek further relief in any other manner.  *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e).  Finally, Plaintiff arguably had waived his opportunity to pursue relief on this complaint by failing to resubmit his Grievance

properly as per the Reviewing Authority's instructions. *See* S.R. Ex. 6.5 (Doc. No. 33-1) at 33; OP-090124 §§ V(A)(7), VI(B)(6).

### s. Grievance No. 2012-1001-00591-G

Plaintiff next requested relief related to the facility's procedures for the observance of Rosh Hashanah and for requesting the issuance of various memos. S.R. Ex. 6.6 (Doc. No. 34-1) at 3-18. Plaintiff filed a Request to Staff and then a Grievance; the Grievance was returned unanswered due to grievance restriction/documentation deficiencies. S.R. Ex. 6.6 (Doc. No. 34-1) at 10-18; *see* Compl. at 20-21, 24-25. Plaintiff resubmitted the Grievance, but it was rejected by the Reviewing Authority based upon the same cited deficiencies. S.R. Ex. 6.6 (Doc. No. 34-1) at 3-9  In addition, the Reviewing Authority noted that Plaintiff would need a new affidavit signed after corrections had been made and that, due to Plaintiff's continued failure to properly submit, he was out of time. S.R. Ex. 6.6 (Doc. No. 34-1) at 3; *see* OP-090124 § V(A)(1). On appeal (No. 13-0943), the ARA rejected Plaintiff's appeal based upon: (1) grievance restriction/documentation; (2) additional issues submitted in the grievance appeal that were not presented in the initial grievance; (3) "[a]ppeal was not properly completed" because Plaintiff failed to enter his name at the designated location on the appeal form; and (4) no affidavit was submitted. S.R. Ex. 6.6 (Doc. No. 34.1) at 2.

As outlined above in Part II(D)(1)(e), the ARA was not authorized to reject Plaintiff's Grievance Appeal based upon a failure to submit a grievance-restriction affidavit on appeal. However, the ARA was authorized to reject Plaintiff's appeal on any or all of the three other grounds cited. *See* OP-090124 §§ VII(B)(1)(e), VII(B)(5).

Plaintiff's grievance-restriction affidavit was deficient because it was not "made under penalty of discipline for lying to staff" and did not state that all contents of the grievance were "true and correct to the best of the offender's knowledge." *See* S.R. Ex. 6.6 (Doc. No. 34-1) at 8-9;[16] OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as April 27, 2012, but contained notarizations dated February 13, 2012, and March 23, 2012. *See* S.R. Ex. 6.6 (Doc. No. 34-1) at 8-9. In addition, while Plaintiff's appeal form is not included in the record, there is no contention by Plaintiff or evidence in the record creating a genuine dispute as to whether Plaintiff's appeal improperly contained multiple issues and was submitted on an incorrectly completed form, as cited by the ARA. *See id.* at 2.

### t. Grievance No. 2012-1001-00609-G

Plaintiff filed a Request to Staff and then a Grievance regarding alleged errors in DCF's procedure for the observance of Sukkot. S.R. Ex. 6.6 (Doc. No. 34-1) at 26-34; *see* Compl. at 23. The Reviewing Authority returned the Grievance unanswered because Plaintiff's grievance-restriction affidavit "contains corrections made after the document was notarized" but provided express permission to resubmit a corrected version. S.R. Ex. 6.6 (Doc. No. 34-1) at 25; *see also id.* at 30-34 (reflecting that affidavit bears four separate notarization dates and numerous handwritten edits interspersed throughout).

---

[16] Pages 3 and 4 of the four-page affidavit were not submitted with the Special Report and therefore are not included in the record before the Court, but the deficiencies noted herein are evident from the first two pages. *See* S.R. Ex. 6.6 (Doc. No. 34-1) at 8-9.

Plaintiff did not correct the affidavit and resubmit, but appealed. The Grievance Appeal (No. 13-0974) was returned unanswered, with express permission to resubmit a corrected version, based upon: (1) grievance restriction/documentation deficiencies; and (2) lack of an affidavit. *Id.* at 24; *see supra* Part II(D)(1)(e). The rejection of Plaintiff's resubmitted Grievance Appeal likewise cited, as a basis for that decision, Plaintiff's failure to properly submit a grievance-restriction affidavit. S.R. Ex. 6.6 (Doc. No. 34-1) at 23; *see supra* Part II(D)(1)(e).

The ARA's rejection of the resubmitted appeal was authorized by OP-090124 §§ VII(B)(1)(e) and VII(B)(5) based upon Plaintiff's failure to correct the underlying deficiencies associated with his Grievance. *See also* OP-090124 § IX(B)(2)(a). The typed affidavit contained numerous handwritten edits that were interlineated after the earliest notarization date. S.R. Ex. 6.6 (Doc. No. 34-1) at 30. On three of its five pages Plaintiff's affidavit was not verified as "made under penalty of discipline for lying to staff" and did not state that all contents of the grievance were "true and correct to the best of the offender's knowledge." *See id.* at 30-34; OP-090124 § IX(B)(2)(a). The affidavit submitted by Plaintiff clearly had not been notarized in at least its final form because, as submitted, the affidavit described action taken on previous grievances as late as September 9, 2012, but contained notarizations from February, March, and June of 2012. *See* S.R. Ex. 6.6 (Doc. No. 34-1) at 30-34. There is no contention or evidence in the record that Plaintiff attempted to resubmit his appeal or to seek further relief in any other manner. *See* Oglesby Aff.; Underwood Aff.; *cf.* OP-090124 § VII(B)(1)(e). Finally, Plaintiff arguably had waived his opportunity to pursue relief on this complaint by failing

to resubmit his Grievance properly as per the Reviewing Authority's instructions. *See* S.R. Ex. 6.6 (Doc. No. 34-1) at 25; OP-090124 §§ V(A)(7), VI(B)(6).

### u. *Grievance No. 2012-1001-00658-G*

Plaintiff submitted a Request to Staff requesting chocolate bars for Chanukah, then, dissatisfied with the response, filed an "Emergency" Grievance that mentioned chocolate but primarily requested that a Chanukah scheduling memo be issued to staff in accordance with Plaintiff's specific requests. S.R. Ex. 6.6 (Doc. No. 34-1) at 64-66; *see* Compl. at 21, 24-25. After his first Emergency Grievance was denied on the basis that a memo already had been issued, S.R. Ex. 6.6 (Doc. No. 34-1) at 63, Plaintiff filed a second Emergency Grievance requesting a copy of the scheduling memo, *id.* at 60-61 (Doc. No. 34-1). The Reviewing Authority returned Plaintiff's filing as incomplete, with leave to resubmit a corrected version, because Plaintiff failed to answer all the required questions on the grievance form; however, the Reviewing Authority's transmission notes that Plaintiff was nevertheless given a copy of the memo. *Id.* at 59, 62 (Doc. No. 34-1); *see* OP-090124 § VI(B)(6). Plaintiff did not resubmit, but instead appealed. Plaintiff's Grievance Appeal (No. 13-1103) was returned unanswered based on (1) grievance restriction/documentation deficiencies; and (2) lack of an affidavit. S.R. Ex. 6.6 (Doc. No. 34-1) at 58.

The ARA properly rejected Plaintiff's appeal for grievance-restriction and documentation deficiencies, although a rejection based upon a lack of a separate submission of an affidavit on appeal would have been unauthorized as outlined above in Part II(D)(1)(e). The ARA's disposition of the appeal was authorized, however, because

Plaintiff failed to correct the errors in his grievance form that were specifically noted by the Reviewing Authority. S.R. Ex. 6.6 (Doc. No. 34-1) at 59-60; *see* OP-090124 §§ V(A), V(A)(7), VI(A)(2)(d), VI(B)(6), VII(B)(1)(e), VII(B)(5). Further, there is no evidence in the record to indicate that Plaintiff submitted a grievance-restriction affidavit with the Emergency Grievance, as required by OP-090124 §§ IX(B)(2) and VIII. Finally, Plaintiff arguably had waived his opportunity to pursue relief on this complaint by failing to resubmit his second Emergency Grievance properly as per the Reviewing Authority's instructions. *See* S.R. Ex. 6.6 (Doc. No. 34-1) at 59; OP-090124 §§ V(A)(7), VI(B)(6).

### E. Plaintiff's Failure to Properly Exhaust Administrative Remedies

The PLRA's mandatory administrative exhaustion requirement, *see Jones*, 549 U.S. at 211, applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust administrative remedies, Plaintiff may not file "an untimely or otherwise procedurally defective grievance or appeal"; rather, Plaintiff must "us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *See Ngo*, 548 U.S. at 83, 90 (internal quotation marks omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

As support for the requested entry of summary judgment, Defendants have submitted a sworn affidavit from the Special Report Coordinator for DCF, who prepared the Special Report in this case. *See* Oglesby Aff.; Fed. R. Civ. P. 56(c)(4). The

Coordinator stated that the Special Report, which includes the documentation of Plaintiff's informal and formal administrative requests for relief, was true and correct to the best of her information, knowledge, and belief. *See* Oglesby Aff. *See generally* OP-090124 § X(B). Defendants also have submitted a sworn affidavit from Defendant Terry Underwood, the Grievance Coordinator charged with maintaining the grievance records and logs at DCF. *See* Underwood Aff.; Fed. R. Civ. P. 56(c)(4). Defendant Underwood likewise attests to the accuracy of the grievance record in the Special Report, with the exception of one missing Grievance. *See* Underwood Aff.; *supra* note 14. Plaintiff generally does not dispute Defendants' account of the history of the informal requests, grievances, and grievance appeals submitted by him and the responses provided by Defendants.

Upon review of the arguments and evidentiary materials presented by the parties, the undersigned concludes that Plaintiff did not fully exhaust his administrative remedies with respect to any of the claims in his Complaint. As detailed at length above, Plaintiff never *properly* presented his relevant grievances, "in accordance with the applicable procedural rules," through *all* available levels of administrative review. *See Ngo*, 548 U.S. at 88, 90. Plaintiff filed numerous documents, but his submissions never culminated in a timely and procedurally proper grievance and grievance appeal to the ARA, as required for prison officials to reach the merits of the claims underlying Plaintiff's Complaint for purposes of the PLRA and for determination of Plaintiff's federal-law claims by this Court. *See* 42 U.S.C. § 1997e(a); *see, e.g., Church v. Okla. Corr. Indus.*, No. CIV-10-1111-R, 2011 WL 4376222, at *6 (report and recommendation of Couch, J.)

("Plaintiff failed to exhaust administrative remedies. Plaintiff made many attempts to exhaust the issue . . . , but each time Plaintiff did not follow the grievance process."), *adopted*, 2011 WL 4383225 (W.D. Okla. Sept. 20, 2011), *aff'd*, 459 F. App'x 806 (10th Cir. 2012).

Substantial compliance with ODOC's "'deadlines and other critical procedural rules'" is not sufficient under the PLRA. *Craft v. Null*, 543 F. App'x 778, 779 (10th Cir. 2013) (quoting *Ngo*, 548 U.S. at 90); *Jernigan*, 304 F.3d at 1032. Even if it were, the picture that emerges upon close scrutiny of Plaintiff's grievance submissions is of a repeated failure to comply with basic procedural requirements. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Thus, the pertinent issue is not *how often* Plaintiff submitted administrative complaints, but *how well*. Plaintiff repeatedly was provided guidance on how to properly submit his grievances and grievance appeals. As reflected above, when Plaintiff did follow the applicable procedural instructions (and even sometimes when he did not), Plaintiff received a substantive response. *See, e.g.*, S.R. Ex. 6.1 (Doc. No. 29-6) at 66-67 (reflecting that the ARA ordered further investigation by the Reviewing Authority into Plaintiff's complaint, resulting in Plaintiff receiving a Revised Grievance Response, but that Plaintiff improperly altered the appeal form thereafter). When Plaintiff failed to follow the proper procedure, his grievances and grievance appeals were returned to him unanswered, as the authorities generally were authorized to do. As seen numerous times above in Part II(D), Plaintiff nevertheless generally made no attempt to resubmit documents or otherwise correct his errors, even when expressly granted the

opportunity by the relevant authority or when such an opportunity was contemplated by the applicable regulations.

As stated, Plaintiff generally does not dispute Defendants' account of the history of his informal requests, requests to staff, grievances, and grievance appeals. He argues, however, that his failure to exhaust administrative remedies should be excused because he was prevented from doing so by the actions of prison officials. *See* Pl.'s MSJ Resp. at 1-7; Pl.'s MSJ Br. at 7-11. It is true that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250; *see also Jernigan*, 304 F.3d at 1033. Here, however, Plaintiff has failed to demonstrate that prison officials hindered his ability to exhaust administrative remedies to such an extent.

Plaintiff broadly contends that exhaustion should be excused because ODOC has "exploited" the PLRA's exhaustion requirement by "implementing an overly complex and intentionally arb[i]trary and unfair grievance policy and procedure, designed to sh[ie]ld prison officials from prisoner lawsuits." *See* Pl.'s MSJ Br. at 7. Plaintiff has verified his assertions to the Court but beyond his conclusory allegations he presents no evidence specifically demonstrating in what manner this allegedly flawed process prevented him from exhausting his administrative remedies with respect to any of his federal legal claims. *See* Compl. at 35; Pl.'s MSJ Br. at 13; Pl.'s MSJ Decl. at 30; Fed. R. Civ. P. 56(c)(1). Plaintiff instead submits the affidavit of another inmate, who likewise asserts various inadequacies in the DCF grievance process. *See* Pl.'s MSJ Br.

Ex. 4, at 3. Such evidence alone is insufficient to establish that administrative remedies were made unavailable to Plaintiff. *See Robinson-Bey v. Feketee*, 219 F. App'x 738, 741 (10th Cir. 2007); *Church*, 2011 WL 4376222, at *6 n.9.

Plaintiff also argues that he should be excused from the exhaustion requirement because prison officials provided "false and misleading information" "in many important instances" and rejected grievances and grievance appeals without identifying the underlying procedural defect. *See* Pl.'s MSJ Br. at 7-8. Again, Plaintiff fails to present evidentiary material specifically supporting this contention or adequately creating a genuine factual dispute as to how or when Defendants allegedly prevented Plaintiff's compliance through dissemination of false information. *See* Fed. R. Civ. P. 56(a), 56(c)(1). Plaintiff's verified Complaint and Brief both attempt to justify Plaintiff's shortcomings through allegations that the prison facility's use of CCA-DCF Policy 14-5 is unlawful and not authorized by OP-090124. *See* Compl. at 7-11; Pl.'s MSJ Br. at 8-11. There is no indication in the record, however, of any appeal to the ARA being rejected based upon any failure by Plaintiff to adhere to a requirement that is specific to CCA-DCF Policy 14-5 or because a grievance proceeded under this Policy rather than OP-090124 (or vice versa). *See* Compl. at 8; Pl.'s MSJ Decl. at 10; Part II(D), *supra*.

Regarding the prison officials' return of Plaintiff's grievances and grievance appeals unanswered, OP-090124—the only policy relevant to this aspect of Plaintiff's exhaustion efforts—requires the Reviewing Authority or the ARA, at most, simply to notify the offender as to the filing's errors when rejecting a filing; the offender is not entitled to a detailed explanation or assistance from these officials. *See, e.g.*, OP-090124

§§ V(A), V(A)(7), VI(B)(6), VII(B)(1)(e), VII(B)(5). In any event, as outlined above in Part II(D), the Reviewing Authority and the ARA provided to Plaintiff, with each rejection, at least a basic explanation of their basis for returning Plaintiff's filings unanswered. And, as shown above in Part II(D), Plaintiff's careful examination of these materials would have shown how each of his submissions failed to adhere to one or more published procedural requirements in every instance of rejection.

Further, the fact that grievances and grievance appeals were returned to Plaintiff unanswered does not excuse Plaintiff from the requirement that he exhaust administrative remedies. The ODOC Grievance Process expressly authorizes prison officials to return grievances and grievance appeals unanswered if the inmate fails to follow the procedural requirements. *E.g.*, OP-090124 §§ II(C) (directing that an untimely grievance "will be returned unanswered"), V(A)(7) (stating that if offender fails to follow instructions the grievance "may be returned unanswered for proper completion"), VII(B)(1)(e) ("The Administrative Review Authority has the authority to return grievances and grievance appeals unanswered when they contain more than one issue or when they fail to be filed in accordance with this procedure."), VII(B)(5) ("Grievances and grievance appeals which present more than one issue or which are not filed in accordance with this procedure will be returned unanswered."); *see also Little*, 607 F.3d at 1249 (noting that "the prison's procedural requirements define the steps necessary for exhaustion"). "[D]efendants did not make the exhaustion process unavailable to [Plaintiff] by returning his documents unanswered." *See Thomas*, 609 F.3d at 1118 n.2.

Plaintiff attempts to excuse his failure to exhaust by portraying the prison officials' interpretation of the grievance policy as "hypertechnical," particularly in regards to those requirements applicable when Plaintiff was on grievance restriction. *See* Pl.'s MSJ Br. at 13. To the contrary, as outlined above in Part II(D), Plaintiff serially submitted deficient grievance-restriction affidavits that had not been notarized in their final, submitted form and did not conform to the published requirements of OP-090124 § IX(B)(2)(a). Upon rejection, Plaintiff simply would submit an identical or nearly identical affidavit again, without any genuine effort to rectify the deficiencies. The Tenth Circuit has made clear that a plaintiff's disagreement as to the appropriateness of a particular procedure, or a plaintiff's belief that he should not be required to correct a procedural deficiency, does not excuse the plaintiff's obligation to comply with the available process. *See Thomas*, 609 F.3d at 1119 (affirming dismissal of 10 unexhausted claims (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1309 (10th Cir. 2010) (affirming dismissal of eight unexhausted claims))). As in *Thomas*, Plaintiff—despite being "notified of deficiencies at the formal grievance stage"—still very often "chose not to avail himself of the opportunity to cure them," but "chose to continue to submit formal grievances that were contrary to defendants' reasonable interpretation of the grievance requirements." *See id.* at 1118. Plaintiff "may not successfully argue that he ha[s] exhausted his administrative remedies by, in essence, failing to employ them." *See id.* (internal quotation marks omitted).

A pro se litigant's pleadings are liberally construed and "held to a less stringent standard" than those drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991). This liberal construction, however, does not relieve Plaintiff from carrying his burden in opposing a motion for summary judgment. Having reviewed both parties' submissions, Plaintiff's declarations and supporting documents are insufficient to "demonstrate with specificity the existence of a disputed material fact." *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). The undisputed material facts show that Plaintiff did not *properly* submit a grievance appeal relating to his allegations against Defendants through the full hierarchy of administrative review as required to complete the ODOC Grievance Process. *See Ngo*, 548 U.S. at 90; *cf. Jackson v. Workman*, 391 F. App'x 724, 725 (10th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies when he had not filed administrative appeal).

None of the evidence in the record, even when construed in favor of Plaintiff as the nonmoving party on the MSJ Defendants' Motion for Summary Judgment, creates a genuine question of fact that would prevent the conclusion that Plaintiff did *not* exhaust his administrative remedies prior to commencing his federal claims against Defendants. "[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Accordingly, the undersigned finds that Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in favor of the MSJ Defendants on Plaintiff's claims against them.

> F. *Application of Determination on Exhaustion of Administrative Remedies to Plaintiff's Remaining Claims Against the ODOC Defendants and Defendant O'Claire*

The ODOC Defendants—Justin Jones and Debbie Morton—did not seek summary

judgment explicitly on the basis of Plaintiff's failure to exhaust in their separate Motion to Dismiss. Nevertheless, because the PLRA requires that Plaintiff exhaust administrative remedies before pursuing federal claims against these Defendants, and the above analysis of Plaintiff's efforts to exhaust equally applies to Plaintiff's claims against these Defendants, the undersigned recommends that summary judgment be granted in favor of Defendants Jones and Morton on all individual-capacity federal claims and all official-capacity federal claims seeking prospective declaratory and injunctive relief asserted against them.[17] *See* 42 U.S.C. § 1997e(a); Compl. at 3, 7-13, 15-16, 21, 29, 31-34.

Courts have extended the applicability of a dismissal or entry of summary judgment to a defendant who did not separately assert the relevant affirmative defense in a pleading or motion, absent any showing of harm to the plaintiff. *See, e.g.*, *Van Pier v. Long Island Sav. Bank*, 20 F. Supp. 2d 535, 540 n.6 (S.D.N.Y. 1998) (deeming amended the answer of defendant who failed to raise the defense therein and noting that "plaintiff was aware that all defendants were taking similar positions"); *P&E Elec., Inc. v. Util. Supply of Am., Inc.* 655 F. Supp. 89, 95 n.1 (M.D. Tenn. 1986) (dismissing action as to all defendants where the affirmative defense was raised by the moving defendants and responded to by the plaintiff). Here, "[t]he issues raised by [the nonexhaustion] defense would be identical" as to both the ODOC Defendants and the MSJ Defendants.[18] *See*

_____

[17] In light of this recommendation, the undersigned need not address the ODOC Defendants' alternative arguments in support of dismissal.

[18] Because none of the Defendants has filed a responsive pleading, there is no issue of

*P&E Elec.*, 655 F. Supp. at 90 n.1.

Relatedly, summary judgment based upon Plaintiff's nonexhaustion should be entered in Defendant Frank O'Claire's favor on Plaintiff's federal claims. The Complaint alleges that Defendant O'Claire was employed as the food service supervisor at DCF during the events relevant to this lawsuit. *See* Compl. at 3. The record reflects that Defendant O'Claire was served with the Complaint and summons at DCF via certified mail on May 4, 2013, as indicated by the return of service filed with the Court a few days later. *See* Doc. No. 25. Defendant O'Claire has failed to appear in this action and has not filed a responsive pleading or any motion since being served.

The Tenth Circuit holds that summary judgment may be entered in favor of a nonmoving defendant, so long as the plaintiff has notice and the opportunity to bring forward his or her evidence designed to refute the moving party's request for the entry of judgment. *See, e.g.*, *Kannady v. City of Kiowa*, 590 F.3d 1161, 1170-71 & n.8 (10th Cir. 2010); *see also* Fed. R. Civ. P. 56(f)(1) (directing that a court may grant summary judgment for a nonmoving party "[a]fter giving notice and a reasonable time to respond"); *accord* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720 (3d ed. 1998 & Supp. 2014). Here, Plaintiff was "not deprive[d]" of any

possible waiver of the affirmative defense of nonexhaustion. *See* Fed. R. Civ. P. 7(a), 8(c)(1), 12(b); Order of Apr. 23, 2013 (Doc. No. 19). Further, courts consistently hold that an affirmative defense may be asserted at the summary judgment stage as long as the plaintiff is not harmed by delay or otherwise prejudiced. *See, e.g.*, *Hess v Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729-30 (7th Cir. 2007); *In re Aramark Sports & Entm't Servs., LLC*, No. 2:09-CV-637-TC, 2012 WL 3776859, at *3 (D. Utah Aug. 29, 2012) (citing cases); *Van Pier*, 20 F. Supp. 2d at 540 n.6 (citing cases).

"procedural safeguards" or "of the opportunity to present any beneficial evidence" relevant to nonexhaustion, and the issues and claims are no different with respect to Defendant O'Claire than with respect to the MSJ Defendants. *See Jones v. Union Pac. R.R.*, 302 F.3d 735, 740 (7th Cir. 2002); *see also Riley v. Gardner*, No. 12-671-GPM, 2013 WL 3124386, at *3-4 (S.D. Ill. June 19, 2013) (extending grant of summary judgment on grounds of nonexhaustion under PLRA to a defendant who had answered but had not filed a dispositive motion); *Ford v. Page*, No. 00 C 4592, 2002 WL 31818996, at *3 n.4 (N.D. Ill. Dec. 13, 2002) (entering summary judgment in favor of unserved defendant on basis of plaintiff's nonexhaustion under PLRA where claims against that defendant were "integrally related to the claims against the moving defendants"). In light of these authorities, and the undisputed facts set forth above, the undersigned finds that it would only extend these proceedings unnecessarily to await Defendant O'Claire's participation in this case simply to enter summary judgment in his favor on the same grounds as for the MSJ Defendants.

Plaintiff will suffer no undue prejudice or delay from the Court's extension of its findings and conclusions regarding exhaustion to the claims against the ODOC Defendants and Defendant O'Claire. Summary judgment therefore should be entered in favor of all Defendants on those claims remaining for disposition.

## III. Whether Plaintiff Is Entitled to a Preliminary Injunction

Plaintiff has filed a motion requesting a temporary restraining order and preliminary injunction against Defendants. This Motion seeks injunctive relief on the same grounds raised in Plaintiff's Kosher Diet Claims and addressed herein. *See* Pl.'s

Mot. Prelim. Inj. (Doc. No. 52).[19]   Plaintiff's Motion specifically requests that Defendants be required to immediately provide Plaintiff with "a nutritious Kosher diet," or that Defendants be required to make weekly deposits to Plaintiff's inmate trust account to enable Plaintiff to purchase canteen items, or that Plaintiff be transferred to a different facility that serves "legitimate" kosher meals.  *See id.* at 1-2.

As set forth above, Plaintiff's Kosher Diet Claim is in part subject to dismissal as a result of Eleventh Amendment immunity and, as to the remainder, subject to summary judgment for failure to satisfy the PLRA's exhaustion requirements.   These findings render Plaintiff's request for injunctive relief moot.   Regardless, Plaintiff has not met his burden to establish the requirements for a preliminary injunction.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).   For entry of a preliminary injunction, the applicant generally must satisfy four elements: (1) a substantial likelihood that he or she will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3)

---

[19] Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b).  Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney."  *See* Fed. R. Civ. P. 65(b)(1).  Because Defendants here had both notice and an opportunity to respond to Plaintiff's Motion for Preliminary Injunction, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction.  *See, e.g.*, *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Charles Alan Wright et al., *supra*, § 2951, at 276-77 (3d ed. 2013).

outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction. *Id.* at 1261; *Little*, 607 F.3d at 1251. Here, Plaintiff seeks relief that is mandatory—the entry of any of Plaintiff's requested forms of relief would affirmatively require Defendants to act in a particular way and would place this Court in a position where it would be required to provide ongoing supervision. *See* Pl.'s Mot. Prelim. Inj. at 1-2; *Schrier*, 427 F.3d at 1261. Plaintiff therefore must meet a "heightened standard" on all four required elements. *See Little*, 607 F.3d at 1251. The preliminary injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *See Schrier*, 427 F.3d at 1259. Plaintiff further must make a "strong showing" both with regard to likelihood of success on the merits and with regard to the balance of harms in order to obtain this disfavored preliminary injunction. *Id.* at 1261.

For the reasons set forth above, Plaintiff cannot show "a substantial likelihood of success on the merits" with respect to his Kosher Diet Claim. *See Kikumura*, 242 F.3d at 955; *Church*, 2011 WL 4376222, at *13; *Huffstutler v. Jones*, No. CIV-12-125-M, 2012

WL 2994268, at *5 (W.D. Okla. June 27, 2012) (report and recommendation of Purcell, J.), *adopted*, 2012 WL 2994591 (W.D. Okla. July 20, 2012).  It follows that Plaintiff indisputably cannot meet a "heightened standard" or make a "strong showing" with regard to the likelihood of success on the merits of this claim, as required for the Court to order Plaintiff's requested mandatory injunction.  *See Schrier*, 427 F.3d at 1261; *Little*, 607 F.3d at 1251; Pl.'s Mot. Prelim. Inj. at 1-2.

In addition, Plaintiff has not met his heightened burden of demonstrating that the injunction is not adverse to the public interest—the relevant public interest here being deference to prison officials' proper administration of their prison facilities.  A federal court considering a motion for injunctive relief affecting the conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation.  18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012).  The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987).  Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be accorded unless they violate the Constitution or federal law.  *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987).[20]

---

[20] In *Turner*, the Supreme Court cautioned:

Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.  Prison administration is, moreover, a task that has been committed to the responsibility of

Even if Plaintiff could succeed on his Kosher Diet Claim, the assertions in his Motion do not justify the Court immediately mandating a special diet or payments from Defendants (which arguably would be money damages rather than injunctive relief) or mandating the transfer of Plaintiff to an entirely different prison facility—any of which would interfere with prison management. *See* Pl.'s Mot. Prelim. Inj. at 1-2. Granting the relief Plaintiff seeks would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See Turner*, 482 U.S. at 84-86; *cf. Stephens*, 494 F. App'x at 912 (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary").

For all of these reasons, Plaintiff's Motion for a Preliminary Injunction should be denied. *See, e.g.*, *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming denial of temporary restraining order where "the relief requested was not consistent with the public interest"); *Church*, 2011 WL 4376222, at *13; *Huffstutler v. Jones*, No. CIV-12-125-M, 2012 WL 2994268, at *5 (W.D. Okla. June, 27, 2012) (report and recommendation of Purcell, J.), *adopted*, 2012 WL 2994591 (July 20, 2012).

## IV. Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claim

Plaintiff asserts that Defendants violated Oklahoma state statute through its

---

those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

482 U.S. at 84-85.

previous use of CCA-DCF Policy 14.5 and through officials' actions related to the DCF grievance procedure. *See* Compl. at 7-11 (citing Okla. Stat. tit. 57 § 566.3(G)).[21] Plaintiff has not alleged or established diversity of citizenship within the meaning of 28 U.S.C. § 1332. Because Plaintiff's Complaint alleges no viable federal claim, and no amendment of that pleading would remedy Plaintiff's failure to exhaust his administrative remedies, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim. *See* 28 U.S.C. §§ 1331, 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that: (1) the ODOC Defendants' Motion to Dismiss (Doc. No. 40) be GRANTED IN PART and that Plaintiff's claims for money damages against Defendant Justin Jones and Defendant Debbie Morton in their official capacities be dismissed without prejudice; (2) the MSJ Defendants' Motion for Summary Judgment (Doc. No. 35) be GRANTED and summary judgment be entered in favor of the MSJ Defendants and Defendant O'Claire on Plaintiff's claims against them; (3) summary judgment be entered in favor of Defendants Jones and Morton on all remaining claims against them; (4) Plaintiff's Motion for a

---

[21] Plaintiff cites no authority to support the proposition that this statute creates a private right of action. *Cf. Bishop v. Roof*, No. CIV-11-550-HE, 2012 WL 2257731, at *2 (W.D. Okla. Apr. 16, 2012) (report and recommendation of Roberts, J.), *adopted*, 2012 WL 2245184 (W.D. Okla. June 15, 2012).

Preliminary Injunction (Doc. No. 52) be DENIED; and (5) the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claim.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 11th day of August, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 21st day of July, 2014.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE